UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

WILLIE MAE CARSON,

        Debtor.

Case No. 04-26733

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO
DEBTOR'S MOTION FOR MODIFICATION OF CONFIRMED PLAN

_____

      This matter came before the court on the debtor's motion to modify her confirmed chapter 13 plan. The trustee objected, and this Court sustains the objection. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

      The debtor filed a chapter 13 petition on May 3, 2004, and her original plan was confirmed on July 22, 2004. The debtor then filed an amended plan on August 2, 2004, which provided for a dividend of at least two percent to unsecured creditors. The August 24, 2004, order confirming the amended plan provided that the debtor was to pay one-half of any tax refunds into the plan for an additional dividend to unsecured creditors. The plan was scheduled to last 60 months with payments at $329.33 per month, for a total of $19,759.80, plus one-half of her actual tax refunds, which have totaled $2,257.00 thus far. Therefore, under the plan in effect, the debtor would pay in a total of $22,016.80, as well as one-half of her 2008 tax refund, if any. As of the date of this decision the debtor has paid $18,017.00 toward the plan.

      The debtor's proposed amended plan was "to provide for no further payments to general

unsecured creditors." (Debtor's Motion for Modification of Confirmed Chapter 13 Plan, filed 10/24/2008). Since secured and priority claims have been paid in full, the effect of this modification would be not only to make no further payments to unsecured creditors, the debtor would also stop paying into the plan. It follows that she would receive a discharge at this point.

So far, disbursements by the trustee have equaled $17,819.73, and the trustee has $197.27 on hand, for a total amount of $18,017.00. Those disbursements are broken down as follows:

| | |
|---|---|
| Attorney's Fees | $ 1,500.00 |
| Secured Claims | 11,811.00 |
| Trustee Commission | 996.31 |
| Total | $14,307.31 |

Unsecured creditors have received the remaining disbursements of $3,512.42. To give all unsecured creditors 10.65%, which is what the disbursement is so far to unsecured creditors, an additional $24.06 must be paid to two creditors, and the trustee has $197.27 on hand, which is more than enough.

The debtor has not, however, contributed to the plan $2,257 in tax refunds. If unsecured creditors received the $3,512.45 already disbursed, plus tax refunds of $2,257.00, they would be entitled to $5,769.45, for a dividend of 17.36 % ($5,769.45 divided by $33,240.98) at this time. The debtor is substantially current in regular payments, and the 11 months (64 months from confirmation) projected by the trustee as remaining in the plan probably reflects additional funds from tax refunds due the plan.

Generally, an attempt to modify a plan to prevent further payments to unsecured creditors is an attempt to avoid a prior default or to obtain a hardship discharge without proof, neither of which is allowable. The debtor, nevertheless, argues that ceasing payments to unsecured

2

Case 04-26733-mdm    Doc 35    Filed 12/15/08    Page 2 of 5

creditors is not an attempt to cure a prior default with an amendment. She reasons that the original plan was to pay unsecured creditors only two percent of their allowed claims, which would have been $664.82. This amount, plus tax refunds of $2,257.00, is only $2,921.81, and they have already received $3,245.83. Since they have received more than the confirmed plan provided, the argument continues, the proposed modification that stops payments now does not cure a default.

This argument is unpersuasive. On the contrary, the debtor is now in default by the amount of unpaid tax refunds. Proposing a new plans that provides for no further payments to unsecured creditors, and no further plan payments by the debtor, is an attempt to forgive the default by modification.

If we focus on what has been paid pursuant to the confirmed plan, it is clear that stopping payments now is an attempt to achieve forgiveness of the default by modifying the plan. The trustee has disbursed $3,512.45 to unsecured creditors. If those unsecured creditors had received this amount from the debtor's periodic payments, plus the required tax refunds of $2,257.00, they would have received $5,769.45, for a dividend of 17.36 % by this time. The modification is an obvious attempt to receive a discharge after defaulting on the plan and violating the terms of the order of confirmation.

The debtor's reasoning assumes that certain fortuitous circumstances – such as a failure of creditors to file claims, a change in the trustee's percentage fee, a downward determination of secured claims, or surrendered property – that cause secured claims to differ from the debtor's scheduled projections, inures to the benefit of the debtor. Not so. The plan currently in effect provides that unsecured creditors will receive "*not less than* 2 cents on the dollar and paid pro

3

rata." (Chapter 13 Plan – Amended ¶ 4d(2), filed 8/2/2004) (emphasis added). The plan anticipates that scheduled claims, which were used to formulate the debtor's plan, may not be the same as filed or modified claims. However, it does not follow that the reduction of claims means the debtor can reduce plan payments to pay less than disposable income. Adding in tax refunds, which is additional disposable income, frequently raises the pro rata amounts distributed to unsecured creditors. This is exactly what was intended by requiring contribution of one-half of the refund. It does not mean that the debtor can just stop paying into the plan once a minimum payout is reached.

The debtor also argues that she should be able to get a discharge now that she has paid in for over 36 months, as this is all she is required to do. This is true, but if the debtor initially believed that 60 months would be necessary to satisfy secured and priority creditors and to make a meaningful distribution to other creditors, the Code in effect at the time of confirmation permitted such a proposal, as do the current amendments. 11 U.S.C. § 1322(d). That is what occurred in this case. But if an order confirming such a plan is to mean anything, it must be more than allowing a debtor to say, "Since the claims are lower than I thought, I can quit after paying after creditors receive the pittance I originally thought I could pay." The 2005 Amendments to the Bankruptcy Code refer to the length of a plan as a "commitment period." 11 U.S.C. § 1325(b)(1)(B). Those amendments do not apply to this case, but it is reasonable to infer that the debtor was committing to paying for 60 months when she proposed her plan. She should have a reason to stop paying under the plan now via this proposed modification, other than being tired of it or in default. While the Seventh Circuit Court of Appeals has held that modification does not necessarily require a change in circumstances, 11 U.S.C. § 1329; *Matter of Witkowski*, 16 F.3d

4

739 (7th Cir. 1994), it seems to me that having paid for 36 months already is not reason enough, especially when the debtor has violated the order of confirmation, and no other excuse is offered here. Good faith is required to amend a plan, and the showing here is insufficient.

The Code does provide for a discharge without completing the confirmed plan. A hardship discharge is available. 11 U.S.C. § 1328(b); *See In re Young*, 370 B.R. 799, 803 (Bankr. E. D. Wis. 2007) (noting most courts faced with a request for a hardship discharge have required the presence of catastrophic or compelling circumstances). The modification proposed by the debtor is an attempt to obtain the benefits of a hardship discharge without meeting those standards. Consequently, the trustee's objection to the debtor's proposed modification of plan is sustained. A separate order consistent with this decision will be entered.

December 15, 2008

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court